UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                         Case No. 04-33271 - WRS
                                                              Chapter 7
WILLIAM C. PHILLIPS,

    Debtor.

DEBORAH HAGAN MILLER,

    Plaintiff,

v.                                                            Adv. Pro. No. 05-3007 - WRS

WILLIAM C. PHILLIPS,

    Defendant.

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for trial on August 25, 2005. Plaintiff Deborah H. Miller was present in person and by counsel Janie S. Gilliland. Defendant William C. Phillips was present in person and by counsel Richard D. Shinbaum. The Court heard evidence and took the matter under submission. The parties have filed post-trial briefs. (Docs. 22, 23). For the reasons set forth below, the Court finds that the indebtedness owed to the Plaintiff is not excepted from the Debtor's discharge. That is, the debt is discharged.

## I. FACTS

The parties were married in 1992. They were divorced pursuant to a divorce decree entered November 7, 2002, in proceedings in the Circuit Court for Montgomery County, Alabama, under Case No. DR-02-1257. The divorce decree incorporated a Marital Settlement

Agreement, which provides for the payment of child support, custody, visitation and the division of the parties' property. (Plaintiff's Exhibit 1). The parties have one child, a boy.

The Settlement Agreement (Agreement) calls for child support in the amount of $651 per month. Paragraph 6(b) of the Agreement provides as follows:

> The parties have entered into a fair written agreement establishing the award of child support herein and the same is in compliance with Rule 32, Alabama Rules of Judicial Administration. Said child support deviates from the Supreme Court Guidelines due to the overall agreement of the parties, the fact that Wife is assuming the full indebtedness on the marital residence, Wife [is] borrowing money to pay off credit card debts, Husband is paying extra in child support to contribute to the additional expense of the Wife for the debt on the marital residence and loan to pay off the credit card debt, and Husband wishes to maintain the child's current standard of living.

In addition, Paragraph 10 of the Settlement Agreement provides as follows:

> 10. **ALIMONY IN GROSS:** Husband shall pay to the Wife, as alimony in gross, the total sum of Seventy-Eight Thousand One Hundred Twenty and no/100 ($78,120.00) Dollars. Said alimony in gross shall be paid to the Wife in monthly installments of six Hundred Fifty-One and no/100 ($651.00) Dollars, commencing on October 15, 2002 and continuing on the 15th day of each and every month hereafter for a period of ten (10) years, or until such time as said alimony in gross has been paid in full, whichever shall first occur. Husband acknowledges that said alimony in gross is an integral part of the financial support settlement for the Wife and minor child and is not subject to bankruptcy.

It should be noted that the child support obligation, set forth in Paragraph 6 of the Settlement Agreement, is separate from the obligation to make payments under Paragraph 10.

-2-

The evidence at trial indicated that the fact that these two amounts are equal is coincidental. In other words, the Debtor's total monthly obligation is to pay $1,302.00, $651 under Paragraph 6 for child support and an additional $651 under Paragraph 10. It is undisputed that the child support obligation under Paragraph 6 is not dischargable. The question here is whether the second $651 obligation, to be made pursuant to Paragraph 10, is or is not dischargeable. Therefore, it is the task of this Court to determine whether the obligation imposed under Paragraph 10 is excepted from the Debtor's discharge.

William Phillips had been a lineman with Dixie Electric earning annual income, including overtime, of up to $60,000 per year. Unfortunately, he tore his rotator cuff and is no longer able to do physically demanding work. The Debtor testified that he has undergone two surgeries on his shoulder and has been told by his doctors that he will not be able to work as a lineman. The Debtor has a high school education. The Debtor has been employed, as of late, only doing odd jobs for minimal pay. The Defendant has sought social security disability income but has been denied. The Plaintiff contends that the Debtor is underemployed of his own volition, refusing to work to maximize his earning potential. The Court, having heard the testimony of the parties and having considered the demeanor of both the Plaintiff and the Defendant finds that the Defendant is not wilfully underemployed. Examining all of the facts and circumstances surrounding the Debtor's current situation, the Court finds that he does not have the ability to pay the debt, under Paragraph 10 of the Agreement, from income or property of the Debtor not reasonably necessary to be expended for the maintenance or support of the Debtor or a dependent of the Debtor.

Plaintiff Deborah Miller offered evidence as to her current income. She is employed in a

dentist's office. Her most recent pay stub indicates that she is paid a gross salary of $975 bi-weekly. With a Christmas bonus, which is discretionary with her employer, she can expect an annual income of approximately $26,000 to $28,000 per year. Further, Miller offered evidence of her monthly living expenses in support of her contention that, to the extent it is relevant to a determination made pursuant to 11 U.S.C. § 523(a)(15)(B), discharging the debt in question would not result in a benefit to the debtor that outweighs the detrimental consequences to the Plaintiff. Miller remarried in 2004, but pointedly refused to provide information as to the income of her current husband. As Mr. Miller is a member of her household, his income necessarily has an impact on her standard of living, which is relevant to the question of whether discharging the indebtedness in question would provide a benefit which outweighs the detrimental consequences to Miller. Based upon Miller's refusal to provide this necessary information, the Court infers that the discharge of Phillips' obligation under Paragraph 10 of the Agreement will result in a benefit to the Debtor that outweighs the detrimental consequences to the Plaintiff.

## II. ISSUES

The court will consider two issues here. First, the Court will determine whether the obligation in question is in the nature of alimony, maintenance or support, and therefore excepted from the discharge pursuant to 11 U.S.C. § 523(a)(5). Second, the Court will determine whether the debt in question should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(15).

## III. CONCLUSIONS OF LAW

This is an Adversary Proceeding to determine whether the Debtor's indebtedness to his

-4-

former spouse, pursuant to Paragraph 10 of the parties' Settlement Agreement, is excepted from discharge pursuant to 11 U.S.C. § 523(a). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Exceptions to discharge are strictly construed in favor of the debtor. United States v. Fretz (In re: Fretz), 244 F.3d 1323, 1327 (11th Cir. 2001); Equitable Bank v. Miller (In re: Miller), 39 F.3d 301, 304 (11th Cir. 1994).

### A. THE OBLIGATION IS QUESTION IS NOT IN THE NATURE OF ALIMONY, MAINTENANCE OR SUPPORT

1. The law

The Court will first determine whether the obligation in question is excepted from discharge pursuant to 11 U.S.C. § 523(a)(5),[1] which provides that:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
> * * *
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–
>
> * * *

---

[1] Sections 523(a)(5) and (a)(15) were amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. (Pub. L. 109-8). The amendments affect cases filed after October 17, 2005. As this case was filed on November 12, 2004, the amendments do not apply here.

-5-

> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

The leading case on this question was handed down by the United States Court of Appeals for the Eleventh Circuit in Cummings v. Cummings, 244 F.3d 1263 (11th Cir. 2001).

> Pursuant to § 523(a)(5), a given domestic obligation is not dischargeable if it is actually in the nature of alimony, maintenance, or support. . . Whether a given debt is in the nature of support is an issue of federal law. . . Although federal law controls, state law does provide guidance in determining whether the obligation should be considered support under § 523(a)(5). To make this determination a bankruptcy court should undertake a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support.

Id. at 1265 (internal citations and quotation marks omitted); see also, Harrell v. Sharp (In re: Harrell), 754 F.2d 902 (11th Cir. 1985)(Congress intended that bankruptcy courts make only a simple inquiry into whether or not the obligation at issue is in the nature of support).

2. Application of the facts to the law

First, and most striking, as to the intention of the parties is the label placed upon the obligation by them. It would stand to reason that if the parties call something "Alimony in Gross," they probably intend that it is alimony in gross. Alabama law treats alimony in gross as something in the nature of a property settlement rather than in the nature of support.

Case 05-03007    Doc 24    Filed 11/22/05    Entered 11/22/05 12:15:38    Desc Main
Document      Page 6 of 17

> Our Supreme Court has explained the difference between periodic alimony and alimony in gross. (citation omitted). Alimony in gross is considered "compensation for the [recipient spouse's] inchoate marital rights [and] ... may also represent a division of the fruits of the marriage where liquidation of a couple's jointly owned assets is not practicable." (citation omitted). An alimony-in-gross award "must satisfy two requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested (citation omitted). It must also be payable out of the present estate of the paying spouse as that estate exists at the time of the divorce. (citation omitted). In other words, alimony in gross is a form of property settlement. (citation omitted). An alimony-in-gross award is generally not modifiable.
>
> Periodic alimony, on the other hand, "is an allowance for the future support of the [recipient spouse] payable from the current earnings of the [paying spouse]." (citation omitted). Its purpose is "to support the former dependent spouse and to enable that spouse, *to the extent possible*, to maintain the status that the parties had enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage." (citation omitted). Periodic alimony is modifiable based upon changes in the parties' financial conditions or needs, such as an increase in the need of the recipient spouse, a decrease in the income of the paying spouse, or an increase in the income of the recipient spouse. (citation omitted) The paying spouse's duty to pay periodic alimony may be terminated by petition and proof that the recipient spouse has remarried or is cohabitating with a member of the opposite sex.

<u>Daniel v. Daniel</u>, 841 So.2d 1246, 1250 (Ala. Civ. App. 2002)(quotation marks, bracketed matter and italics in original); <u>see also</u>, <u>Laminack v. Laminack</u>, 675 So.2d 479 (Ala. Civ. App. 1996).

A second indication that the parties did not intend Phillips' obligation to be periodic alimony may be found in Paragraph 11 of the Agreement where it is stated that "(n)either party shall be obligated for the payment of periodic alimony to the other; however, the issue of periodic alimony is hereby reserved on Wife's behalf only." Thus, the parties have not only

-7-

stated that the obligation in question is alimony in gross, they have also explicitly stated that it is not periodic alimony.

Third, the nature of Phillips' obligation under Paragraph 10 of the Agreement is cast in the form of a property settlement. The amount is specified as $78,120, payable at a rate of $651 per month, for ten years. The payments do not terminate upon the remarriage of the recipient. The fixed term and the total amount further suggests a property division rather than periodic alimony.

Fourth, Miller states in her brief, at page 14, that "the Court found that the payments due to the Wife were alimony in gross and not periodic alimony."[2] (Doc. 22). Therefore, not only have the parties called this obligation alimony in gross, but the Divorce Court has as well. Miller argues that the Debtor must be of the view that the obligation is in the nature of alimony as he tried to reduce his obligation in the Divorce Court before coming to Bankruptcy Court. To turn her argument on its head, it does not appear that Phillips should lose both ends of that argument. That he may have made an inconsistent argument in another Court, and lost, should not preclude him from making an argument which is consistent with the determination of the Divorce Court.

Fifth, examination of the totality of the circumstances which the parties now find themselves in further suggests a property settlement rather than periodic alimony. Phillips is only

---

[2] Testimony was adduced concerning post-dissolution proceedings at trial. It does not appear that a copy of any determination made by the Divorce Court, except for the Divorce Decree, was offered into evidence here. The Court notes that there may have been an argument to the effect that the § 523(a)(5) question here is precluded by a prior judgment of the Divorce Court, however, any such argument fails for want of proof.

minimally employed doing odd jobs for very low pay.  Moreover, he has virtually no property.[3]
An award of alimony, under the facts of this case, does not make any economic sense.

Miller cites the case of Smith v. Smith (In re: Smith), 263 B.R. 910 (Bankr. M.D. Fla. 2001), in support of her case.  This Court is of the view that the Court in Smith properly stated the law.  "Whether a given debt is in the nature of support is an issue of federal law."  Id. at 917.  Moreover, "(t)he label that the parties attach to a payment is not dispositive; the court must look to the substance, and not merely the form, of the payments."  Id. at 918 (citing In re: Brody, 3 F.3d 35, 38 (2nd Cir. 1993)).  "The question of the parties' intent when they executed the [mediated settlement conference agreement] is one of fact."  Id. at 919.  Thus, each case is to be decided upon its own facts.

Miller correctly observes that there is a facial similarity between the facts of this case and those in Smith.  In both cases, an award of something which was called alimony in gross was in dispute.  Another similarity between these two cases is that the alimony in gross payments did not terminate upon the death or remarriage of the former wife.  As the Court in Smith observed, some aspects of the agreement were ambiguous.  The same is true here.  Paragraph 10 of the Agreement does make reference to financial support of the former wife and the minor child.  Such an observation is incongruous when dividing property and further suggests an award of supprt.  Miller is correct that this reference, in and of itself, favors a finding that the obligation in question is periodic alimony rather than alimony in gross, or a property settlement.  However, the

---

[3] As of the time Phillips filed his petition in bankruptcy, he had no real property and only $15,000 worth of personal property, most of which was a 401(k) plan from his employment at Dixie Electric.  The evidence showed that at least some of that was paid to get himself out of jail when he was held in contempt by the Divorce Court.

Court finds that this consideration is outweighed by other factors, such as the fact that the obligation is called alimony in gross, that it is cast in the form of alimony in gross and that another paragraph of the Agreement makes provision for child support and that Paragraph 11 specifically stated that periodic alimony would not be paid, with a provision that it could be reconsidered at a later date.

The most striking difference between the facts of this case and those of Smith were the relative economic standings of the parties. In Smith, the parties established a business during the course of their marriage. The wife had only a high school education and held only unskilled jobs after her divorce. The husband, on the other hand, had a much higher income from the operation of his business. That at least some of the obligations under the divorce decree were determined to be alimony is not at all surprising. There is a stark contrast between the economic status of the former husband in Smith and Phillips in this case. Smith was relatively well off financially, while Phillips in this case is not. It is this factual difference which is most striking and it is this difference upon which the case turns.

Having undertaken the inquiry called for by the Eleventh Circuit in Cummins, the Court concludes that the obligation in question is not alimony, maintenance or support, within the meaning of 11 U.S.C. § 523(a)(5), and therefore is not excepted from the Debtor's discharge pursuant to that subsection. First, the obligation in question is denominated as alimony in gross and therefore cast in the form of something which is subject to the Debtor's discharge in bankruptcy. Second, the Agreement specifically provides that periodic alimony is not to be paid. Third, the obligation is specified in a gross amount, payable over time in installments, not terminable upon the remarriage or death of the former spouse. Fourth, according to Miller, the

-10-

Divorce Court at one time made a determination that the obligation was alimony in gross.  Fifth, considering all of the attendant facts and circumstances, particularly the state the parties now find themselves in, where Miller is employed in a dentist's office, remarried to a gentleman whose income was not disclosed to the Court and Phillips, who has suffered a permanent shoulder injury disabling him from doing the work he had done all of his adult life working odd jobs for minimal pay and living in his mother's home, weigh most heavily in favor of a conclusion that the obligation in question is alimony in gross and therefore is not excepted from discharge pusrsuant to 11 U.S.C. § 523(a)(15).

3. Applicability of bankruptcy law

It appears that the draftsman of the Agreement attempted to opt-out of the inconveniences of the Bankruptcy Code in connection with Phillips' obligation under Paragraph 10 of the Agreement, which contains a provision that it is "not subject to bankruptcy."  If it were so easy, we would see such language in every promissory note, mortgage, security agreement and contract which calls for one party to pay another.  Alas, everything is "subject to bankruptcy."  Precisely how a bankruptcy filing will affect a given obligation may be the subject of debate.   However, once a person files a petition in bankruptcy, all of his property and all of his obligations are "subject to bankruptcy."

More likely, the draftsman of the Agreement intended that the obligation under Paragraph 10 not be discharged in the event Phillips were to file bankruptcy.  Courts considering such contractual provisions have found that they are not enforceable, for at least one of two reasons.  First, that they are void because they violate public policy.  Hayhoe v. Cole (In re: Cole), 226

-11-

B.R. 647, 654 (B.A.P. 9th Cir. 1998)(Attempt to waive debt before filing petition held to be unenforceable). Second, that they are void because the only exceptions to discharge are contained in 11 U.S.C. § 523(a), or § 524(c). Lewis v. Trump (In re: Trump), 309 B.R. 585, 591 (Bankr. D. Kan. 2004)(Label placed upon an agreement by contract is not binding on the Bankruptcy Court); Airlines Reporting Corp. v. Mascoll (In re: Mascoll), 246 B.R. 697, 700-10 (Bankr. D.D.C. 2000)(Prepetition agreement not enforceable as a reaffirmation agreement because it did not meet the requirements of § 523(c)).

### B. DISCHARGING THE DEBT IN QUESTION WILL RESULT IN A BENEFIT TO PHILLIPS WHICH OUTWEIGHS THE DETRIMENTAL CONSEQUENCES TO MILLER

The second part of the Court's inquiry is to determine whether the obligation in question should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(15), which provides as follows:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
> * * *
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless–

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . ., or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

A determination made pursuant to § 523(a)(15) is a two part inquiry. First, the Court must determine whether the debt in question falls within the scope of § 523(a)(15). That is, the obligation in question is incurred in connection with a divorce decree and it is not of a kind described in § 523(a)(5). Examination of the debt in question shows that it quite plainly was incurred in the course of a divorce decree. Moreover, as the Court has determined in Part III(A) above, the debt is not of a kind described in (a)(5).

Therefore, the first part of the inquiry is complete, the debt in question falls within the scope of § 523(a)(15). However, there are two exceptions which, if applicable, will cause Miller's case to fail. Before considering the merits of the (a)(15)(A) and (B) exceptions, the Court will consider the question of who bears the burden of proof. In general, the party who seeks the exception to discharge bears the burden of proof. <u>Dixon v. Cross (In re: Dixon)</u>, 1986 U.S. LEXIS 21286, at *3 (11th Cir. Jan. 6, 1986)(The creditor bears the burden of proof that a particular debt is nondischargeable); <u>Belfry v. Cardozo (In re: Belfry)</u>, 862 F.2d 661, 662 (8th Cir. 1988)(The burden of proving that a debt falls within a statutory exception is on the party opposing discharge); <u>McGinnis v. McGinnis (In re: McGinnis)</u>, 194 B.R. 917, 920 (Bankr. N.D. Ala. 1996)(Ordinarily the creditor has the burden of proving each element of its dischargeability action).

-13-

Section 523(a) provides a listing of kinds of debts which are excepted from the debtor's discharge in bankruptcy. That is, once a debtor is granted a discharge, all of his debts are discharged unless the creditor can show that the debt owed her fits within one of the enumerated exceptions. Miller has done that here. It is established that her indebtedness is of the kind enumerated in § 523(a)(15). However, subparagraphs (A) and (B) provide two exceptions, to the exception provided in (a)(15). In other words, there are two exceptions to the (a)(15) exception to discharge. The question next becomes, who bears the burden of proof. Either Miller has the burden to prove that the (A) and (B) exceptions do not apply, or Phillips has the burden to prove that at least one of the exceptions does apply. As (A) and (B) are disjunctive conditions, if either applies, Phillips is excused from paying the debt.

The question of who bears the burden to prove either the existence or nonexistence of the (A) and (B) exceptions is not answered in either the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. The question has generated a considerable number of published cases, none of which is binding upon this Court. Judge Bennett, in a decision published in 1996, undertook an exhaustive examination of the then existing case law on this question. Stone v. Stone (In re: Stone), 199 B.R. 753 (Bankr. N.D. Ala. 1996). Judge Bennett concluded in Stone, that the party seeking the determination of nondischargeability has the burden to show that § (a)(15) applies, that is that the debt is pursuant to a divorce decree and not of a kind provided in §(a)(5), and that the burden is on the debtor to prove either of the subparagraph (A) or (B) exceptions to the exception. Id. at 780; see also, Reetz v. Reetz (In re: Reetz), 281 B.R. 54, 58 (Bankr. S.D. Ala. 2001); Levin v. Farmer (In re: Farmer), 250 B.R. 427, 430-31 (Bankr. M.D. Fla. 2000); McElroy v. McElroy (In re: McElroy), 229 B.R. 478, 481 (Bankr. M.D. Fla. 1998);

-14-

Busch v. Busch (In re: Busch), 226 B.R. 710, 712 (Bankr. M.D. Fla. 1998); In re: Smith, 218 B.R. 254, 258 (Bankr. S.D. Ga. 1997).

Having found that Miller has carried her burden to show that the debt in question falls within the scope of paragraph (a)(15), Phillips has the burden to prove that one of the exceptions applies. The (a)(15)(A) exception applies if the debtor does not have the ability to pay the debt. Having considered Phillips' circumstances, it is quite clear that he does not have the ability to pay the debt in question. As a result of permanent injuries to his shoulder, Phillips' income is, at best, $20,000 per year.[4] As he is already obligated to pay $651 per month for child support, it is apparent that he cannot pay an additional $651 for his obligation under Paragraph 10 of the divorce decree. To hold otherwise, would obligate him to pay 68 percent of his gross income to his former spouse. Therefore, the Court finds that Phillips has met the (a)(15)(A) exception to discharge.

Given the Court's conclusion concerning the (a)(15)(A) exception to discharge, it is not necessary to consider the remaining exception, however, the Court will do so. The (a)(15)(B) exception applies where the debtor can show that the benefit to him of the discharge outweighs the detrimental consequences to the former spouse. "Section 523(a)(15)(B) requires that the Court weigh the effects of the discharge on the debtor and his former spouse." In re: Reitz, 281

---

[4] This is the amount earned by Phillips in 2004 which consisted of his earnings from Parson's Electric. Phillips testified that he lost the job because his shoulder injury would not permit him to carry a ladder so that he could go onto the roofs of houses for the purpose of doing estimates. Even if one assumes that Phillips is underemployed as of the time of trial, the evidence nevertheless shows that it is not likely that he can earn more than $20,000 annually at any time in the foreseeable future.

Case 05-03007    Doc 24    Filed 11/22/05    Entered 11/22/05 12:15:38    Desc Main
Document    Page 15 of 17

B.R. 54, 59. To weigh the effects of the discharge we must consider not only the income of and expenses of each party, but "the financial circumstances of the new spouses logically and sensibly should be included in the balancing test set forth in § 523(a)(15)(B)." Celani v. Celani (In re: Celani), 194 B.R. 719, 721 (Bankr. D. Conn. 1996); see also, In re: Leonard, 231 B.R. 884, 888-89 (E.D. Pa. 1999). As Miller refused to provide information as to her current spouse's income, the Court is unable to make the balancing determination called for by Section 523(a)(15)(B). The Court therefore infers, from Miller's refusal to answer, that the detrimental consequences to her do not outweigh the benefit to Phillips. See General Motors Acceptance Corp. v. Bartlett, 154 B.R. 827, 830 (Bankr. D.N.H. 1993)("the prevailing rule [is that] the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a civil cause.'")(quoting Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976)). Therefore, the debt is discharged.

### VI. CONCLUSION

The Court finds that the debt owed by Phillips pursuant to Paragraph 10 of the Settlement Agreement with his former spouse is not excepted from discharge. First, the Court finds that the debt in question is not in the nature of alimony, maintenance or support and therefore is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(5). Second, the Court finds that the debt in question is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(15), for two reasons: first, that he does not have the ability to pay the debt and second because discharging the debt

-16-

results in a benefit to Phillips which outweighs the detriment to Miller. The Court will enter

judgment by way of a separate document.

Done this 22nd day of November, 2005.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Janie S. Gilliland, Attorney for Plaintiff
   Richard D. Shinbaum, Attorney for Defendant